

Villanova University School of Law

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2006

# Romanishyn v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-3141

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Romanishyn v. Atty Gen USA" (2006). *2006 Decisions.* Paper 652.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/652

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3141
_____

VASILIY OSTAPOVICH ROMANISHYN,
Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent.
_____

On Petition for Review of an Order of Removal of
the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A71-346-048)
_____

Argued: Monday, May 15, 2006
_____

Before: McKEE and GARTH, *Circuit Judges*, and

LIFLAND,[*] *District Judge*

(Filed: July 20, 2006)

Craig R. Shagin, Esq. [Argued]
The Shagin Law Group LLC
300 N. 2nd Street, 8th Floor
Harrisburg, PA 17101

*Attorney for Petitioner*

Thomas A. Marino, Esq.
Daryl F. Bloom, Esq. [Argued]
United States Attorney's Office
Middle District of Pennsylvania
228 Walnut Street, Suite 220
Harrisburg, Pennsylvania 17108

*Attorney for Respondent*

_____

OPINION OF THE COURT

_____

[*] The Honorable John C. Lifland, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

GARTH, *Circuit Judge*:

Does the Immigration and Nationality Act ("INA") allow an alien who entered the country as a refugee, and subsequently adjusted his status to become a lawful permanent resident ("LPR"), to be placed in removal proceedings although the Attorney General never terminated his refugee status pursuant to 8 U.S.C. §1157(c)(4)? We conclude that it does.

Because we answer that question in the affirmative – and because we conclude that the Immigration Judge ("IJ") in this case did not violate petitioner's due process rights by limiting the number of witnesses he could call to testify at his immigration hearing – we deny Mr. Romanishyn's petition for review.

I.

Vasiliy Ostapovich Romanishyn was born in Ukraine on July 14, 1984. On March 11, 1996, at the age of eleven, he entered the United States with his family as a refugee pursuant to 8 U.S.C. §1157. He adjusted his status to that of a lawful permanent resident, or LPR, on June 26, 1997.

In 2003, Mr. Romanishyn was convicted twice for burglary in violation of 18 PA. CONS. STAT. ANN. §3502(a). For the first conviction, which occurred in the York County Court of Common Pleas on July 1, 2003, he was sentenced to

incarceration and served for a period of 8-23 months. For the second conviction, which occurred in the Cumberland County Court of Common Pleas on August 26, 2003, he was sentenced to incarceration and served for a period of 4-12 months.

As a result of his convictions, the INS initiated removal proceedings against Mr. Romanishyn. The Notice to Appear, issued on February 6, 2004, charged that Mr. Romanishyn was subject to removal pursuant to 8 U.S.C. §§1227(a)(2)(A)(iii) (as an alien who had been convicted of an aggravated felony) and 1227(a)(2)(A)(ii) (as an alien who had been convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal conduct).

In removal proceedings, Mr. Romanishyn claimed that he feared he would be persecuted because he is a Baptist, if he were sent back to Ukraine. He was not eligible to apply for asylum because the offenses for which he had been convicted were "aggravated felonies." 8 U.S.C. §§1158(b)(2)(A)(ii) & (b)(2)(B)(i). The IJ allowed him to submit an application for withholding of removal pursuant to 8 U.S.C. §1231(b)(3)(A), however, because he found that the felonies were not "particularly serious crimes" under 8 U.S.C. §1231(b)(3)(B)(ii).[1]

---

[1] "To be eligible for a grant of *withholding of removal* to any country, an alien must show that his life or freedom would be threatened in such a country on account of race, religion, nationality, membership in a particular social group, or political

Mr. Romanishyn also submitted an application for relief under the Convention Against Torture.

In his pre-hearing brief, Mr. Romanishyn argued that it was error for him to be placed into removal proceedings in the first place because, though he had acquired LPR status, he still maintained his original "refugee" status as well, and the latter status exempted him from removal. The IJ summarily rejected that argument.

At a June 1, 2004 hearing, Mr. Romanishyn's attorney announced that he planned to call nine witnesses to testify at the merits hearing on his client's withholding of removal application. This exchange ensued:

> JUDGE: Obviously, we're not going to have nine witnesses, so you're going to have to pick your best. We don't want any type of redundancy in testimony and I

---

opinion. 8 U.S.C. §1231(b)(3)(A). This statutory provision requires him or her to demonstrate a clear probability of persecution on one of these five grounds. An alien must demonstrate that it is more likely than not he would be subject to such persecution if returned to his native land. This is a more stringent standard than that required to establish eligibility for asylum." *Ilchuk v. Attorney General*, 434 F.3d 618, 624 (3d Cir. 2006) (*citations omitted*) (*emphasis added*).

can't imagine that nine witnesses are going to have something different to say about the same thing.

COUNSEL: Well, they all have different experiences and it's --

JUDGE: Are these all going to be family members?

COUNSEL: No. Some are other Ukrainian Baptists who have recently arrived in the United States and who arrived earlier. Basically, to testify as to the conditions and the social attitudes towards Baptists in the Ukraine and what type of persecution would await Mr. Romanishyn should he return.

JUDGE: What I'm going to require then is a list of these witnesses and a[n] offer of proof as to their anticipated testimony.

COUNSEL: Okay.

JUDGE: You can anticipate perhaps one or two of them being permitted to testify. If you want to have all of them standing by you can. If you want to have them submit an affidavit you can do that, but just understand up front we're not going to have nine witnesses. So, you pick your best and we'll proceed from that point.

COUNSEL: Okay.

Ultimately, at Mr. Romanishyn's June 30, 2004 merits hearing, only one witness, his uncle, testified. However, Mr. Romanishyn did submit statements from the other witnesses he had wanted to call, and the IJ considered them.

In an opinion dated September 1, 2004, the IJ denied Mr. Romanishyn's application for withholding of removal for two reasons. First, he found the documentary evidence Mr. Romanishyn submitted, inadequate to fulfill his burden of establishing a clear probability that, if returned to Ukraine, he would be persecuted on account of his religion. Second, he found that the evidence did not show that Mr. Romanishyn had suffered past persecution, and so the regulatory presumption of future persecution, 8 C.F.R. §208.16(b)(1), was not triggered.[2]

On appeal to the Board of Immigration Appeals ("BIA"), Mr. Romanishyn (1) renewed his argument that though he had acquired LPR status, he maintained his refugee status as well, and thus was not removable. Additionally he argued that (2) the IJ violated his due process rights when he limited to two the number of witnesses he could call to testify, and (3) the

---

[2] The IJ also denied Mr. Romanishyn's claim under the Convention Against Torture, holding that he had not established that it was more likely than not that he would suffer torture if returned to Ukraine.

-7-

principles of *res judicata* should apply to the question of whether he had suffered past persecution, since he had been admitted to the United States as a refugee in 1996. The BIA dismissed his appeal, holding that Mr. Romanishyn had asserted no grounds for relief.

On April 5, 2005, Mr. Romanishyn challenged his final order of removal by filing a petition for writ of habeas corpus under 28 U.S.C. §2241 in the District Court for the Middle District of Pennsylvania. The District Court granted a stay of removal pending decision on the habeas petition.

On June 21, 2005, the District Court transferred the habeas petition to this court pursuant to Section 106(c) of the REAL ID Act. *See Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (noting that pursuant to Section 106(c), "all habeas petitions brought by aliens that were pending in the district courts on the date the REAL ID Act became effective (May 11, 2005) are to be converted to petitions for review and transferred to the appropriate court of appeals").

In his converted petition for review, Mr. Romanishyn renews the arguments that he may not be removed because he maintains his protective refugee status, and that the IJ violated his due process rights by limiting to two the number of witnesses he could call at his hearing.

II.

-8-

## A.

The BIA exercised jurisdiction pursuant to 8 C.F.R. §1003.1(b)(3).  We exercise jurisdiction over this converted petition for review pursuant to 8 U.S.C. §1252(a)(1).  Our jurisdiction extends only to constitutional claims and questions of law. 8 U.S.C. §1252(a)(2)(D); *Papageorgiou v. Gonzales*, 413 F.3d 356, 358 (3d Cir. 2005).  Whether an alien who entered the country as a refugee and subsequently acquired LPR status may be placed in removal proceedings even though his refugee status was never terminated under 8 U.S.C. §1157(c)(4), is a question of law.  Whether the IJ violated the requirements of due process when he limited the number of witnesses that Mr. Romanishyn could call at the immigration hearing, is a constitutional claim.[3]

## B.

_____

[3] We reject the government's contention that the court lacks jurisdiction to resolve this second issue because the IJ's decision to limit the number of witnesses was discretionary. *See, e.g., Singh v. Gonzales*, 432 F.3d 533, 537 (3d Cir. 2006) (claim that petitioner's right to due process was violated when IJ limited him to examining just one of three witnesses he sought to call at a hearing on a withholding of removal claim was "constitutional in nature, and within our jurisdiction under the REAL ID Act").

We turn first to the primary question on this appeal: Does the INA allow an alien who entered the country as a refugee, and subsequently adjusted his status to become an LPR, to be placed in removal proceedings although the Attorney General never terminated his refugee status pursuant to 8 U.S.C. §1157(c)(4)? We appear to be the first Court of Appeals to address this question squarely. We review the "BIA's legal decisions *de novo*, but will afford *Chevron* deference to the BIA's reasonable interpretations of statutes which it is charged with administering." *Francois v. Gonzales*, 448 F.3d 645, 648 (3d Cir. 2006) (*quotation and citation omitted*).

Mr. Romanishyn argues that he may not be placed in removal proceedings because refugee status protects a person from removal, and he claims to maintain his refugee status because it was not terminated pursuant to 8 U.S.C. §1157(c)(4), and did not automatically terminate at the moment he adjusted status to become an LPR. The government does not dispute that Mr. Romanishyn's refugee status was not terminated pursuant to 8 U.S.C. §1157(c)(4), but argues that that status (and whatever protection it may have provided from removal) automatically terminated when he became an LPR. Mr. Romanishyn, according to the government, may thus be placed in removal proceedings.

In 2004, this court ordered the BIA to address the precise question here at issue. *Smriko v. Ashcroft*, 387 F.3d 279 (3d Cir. 2004). In response, the BIA held in a 2005 opinion that,

-10-

contrary to Mr. Romanishyn's argument, an alien whose refugee status has not been terminated pursuant to 8 U.S.C. §1157(c)(4), and who has acquired LPR status, <u>may</u> be removed.[4]  Under the BIA's analysis, this is so, not because the acquisition of LPR status itself "extinguishes" or "terminates" refugee status. Rather, it is so because refugee status never provided complete exemption from removal to begin with, so whether or not refugee status has terminated is not determinative of whether an alien who entered the United States as a refugee may be removed.  In other words, the BIA held, a refugee does not have complete protection or immunity from removal *before* he adjusts to LPR status, so it does not follow, under the INA, that he should have such protection or immunity *after* he becomes an LPR.

The BIA's reasoning in its opinion and its ultimate conclusion are not unreasonable.  Therefore, despite the fact that Mr. Romanishyn marshals several arguments in favor of his contrary interpretation of the INA, we must defer to the BIA's interpretation under the principles of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

1.

---

[4]  The BIA issued its *Smriko* opinion after Mr. Romanishyn filed his initial brief with our court, but before the government filed its opposition brief.  Mr. Romanishyn addressed the 2005 *Smriko* opinion in his reply brief.

-11-

A refugee is defined by 8 U.S.C. §1101(a)(42) as

> any person who is within the country of such person's nationality . . . and who is persecuted or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

The Attorney General may admit to the United States "any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible . . . as an immigrant."  8 U.S.C. §1157(c)(1); 8 C.F.R. §207.

The standard for determining whether a refugee is "admissible as an immigrant" at the moment of his entry into this country is significantly more lenient than the standard used to determine whether a person who is seeking admission – *but who is not a refugee* – is admissible.  Specifically, many of the bars to admission imposed on the latter group (non-refugees) by 8 U.S.C. §1182(a) are waived for refugees,[5] and the government

---

[5] The bars to admission for aliens (1) who are likely to become public charges, (2) who enter the U.S. to work who have not been granted labor certification, and (3) who lack required entry documents, are waived for refugees.  8 U.S.C. §1157(c)(3).

-12-

may in its discretion waive most other bars to admission,[6] including the bar which excludes individuals who have committed certain criminal offenses.  8 U.S.C. §1157(c)(3).

The Attorney General may terminate the refugee status of an alien at any time if he determines that the person was not, in fact, a refugee within the meaning of 8 U.S.C. §1101(a)(42) at the time of his entry, i.e., if the Attorney General made a mistake in allowing him to enter as a refugee in the first place. 8 U.S.C. §1157(c)(4); 8 C.F.R. §207.9.  This is the only ground on which the INA allows termination of refugee status.  *See Matter of Garcia-Alzugaray*, 19 I&N Dec. 407, 409 (BIA 1986) ("The sole basis for terminating the status of an alien . . . who was admitted to the United States as a refugee under [8 U.S.C. §1157] is a determination that he was not a refugee within the meaning of [8 U.S.C. §1101(a)(42)] at the time of his

---

[6] For humanitarian purposes, to ensure family unity, or when it is otherwise in the public interest, the government may waive all of 8 U.S.C. §1182(a)'s bars to admission except those which exclude (1) controlled substance traffickers, (2) those who seek entry to the U.S. to engage in unlawful activity, (3) those who have various kinds of relationships to terrorist activity, (4) those whose entry into the U.S. would have potentially serious adverse foreign policy consequences for the U.S., and (5) those who participated in Nazi persecution, genocide or the commission of any act of torture or extrajudicial killings.  8 U.S.C. §1157(c)(3).

admission."). After an alien's refugee status has been terminated, he is placed into removal proceedings. 8 C.F.R. §207.9.

Every refugee admitted under 8 U.S.C. §1157 whose refugee status has not been terminated is required, one year after entry into the United States, to submit an application to adjust status and become an LPR, i.e., to be "admitted for permanent residence."[7] 8 C.F.R. §209.1. If the refugee is found to merit LPR status, he will "be regarded as lawfully admitted to the United States for permanent residence as of the date of [his] arrival into the United States." 8 U.S.C. §1159(a)(2). *See also* 8 C.F.R. §209.1(e). If the refugee is found *not* to merit LPR status – if, for example, he is subject to one of 8 U.S.C. §1182(a)'s bars to admission and the Attorney General does not waive that bar – he will be placed into removal proceedings. 8 C.F.R. §209.1(e). *See Matter of Jean*, 23 I&N Dec. 373, 381 (BIA 2002) *and* Gen. Co. 93-78,1993 WL 1504025 (INS) (Oct. 8, 1993) (describing this process).

---

[7] If a refugee does not voluntarily apply for and acquire LPR status within a year of entering the United States, he is apparently compelled to do so. *See* 8 U.S.C. §1159(a)(1) (stating that such refugees must "return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States in accordance with" provisions of the INA governing removal and removal proceedings).

-14-

A refugee whose refugee status was not terminated pursuant to 8 U.S.C. §1157(c)(4), and who has not yet been adjudicated inadmissible by an immigration officer in the course of applying for LPR status pursuant to 8 C.F.R. §209.1, may not be placed in removal proceedings, even if he has engaged in conduct that would subject a non-refugee to removal. *Garcia-Alzugaray*, 19 I&N at 410. To that limited extent, refugee status is a protected status.

2.

In 2004 – in *Smriko v. Ashcroft*, 387 F.3d 279 (3d Cir. 2004) – this court was faced with the precise question that is now before it again. Sejid Smriko had entered the United States as a refugee pursuant to 8 U.S.C. §1157 and had been granted LPR status pursuant to 8 U.S.C. §1159(a)(2). He was thereafter convicted three times of crimes of moral turpitude (retail theft offenses), and placed in removal proceedings. Smriko claimed (as Mr. Romanishyn claims here) that he could not be removed because he still possessed refugee status – that status had not been terminated pursuant to 8 U.S.C. §1157(c)(4), and was not extinguished automatically when he acquired LPR status. The IJ rejected this claim and ordered Smriko removed; the BIA affirmed without opinion.

We held that the INA did not explicitly answer the question of whether an alien's protected refugee status persists unless terminated pursuant to 8 U.S.C. §1157, or whether it

-15-

automatically is extinguished when he acquires LPR status. *Id.* at 288. We acknowledged that there was support in the legislative history for both Smriko's interpretation and the government's.

In such a situation, where Congressional intent is obscure, we stated, we would normally apply *Chevron* deference to the agency's interpretation of the statute, so long as that construction was reasonable. By affirming the IJ's decision without opinion, however, the BIA failed to advance an interpretation of the statute – let alone a reasonable interpretation. We therefore remanded the *Smriko* case to the BIA, instructing the BIA to "exercise its expertise and address Smriko's proposed reading of the INA." *Id* at 281.

3.

After Mr. Romanishyn had filed his opening brief in this appeal, but before the government filed its opposition brief,[8] the BIA issued the opinion that we, as the *Smriko* court, had ordered. *In re Sejid Smriko*, 23 I&N Dec. 836 (BIA 2005). The Board held that "an alien who has been admitted as a refugee and has adjusted his or her status to that of a lawful permanent resident may be placed in removal proceedings for acts or conduct amounting to grounds for removal under [8 U.S.C. §1227(a)]." This is true, the BIA held, even if the alien's

---

[8] *See* footnote 4.

refugee status has not been terminated pursuant to 8 C.F.R. §1157(c)(4).

As noted above, the Board so held, not because it believed the acquisition of LPR status itself "terminated" refugee status, but because refugee status never provided absolute exemption from removal in the first place. Thus, refugees who have become LPRs may be removed even if their refugee status is not in the process "terminated."

To demonstrate that refugees never possess absolute exemption from removal, the Board pointed to the provisions of the INA that govern removal, which refer to "the alien," and "any alien," and do not distinguish between aliens who were admitted as refugees and those who were not. The Board also pointed (as the government did here) to the provision that allows refugees to be removed at the time they apply to become LPRs if they are found inadmissible under 8 U.S.C. §1182(a). 8 U.S.C. §1159(a); 8 C.F.R. §209.1.

If a refugee may be removed *before* he becomes an LPR, the Board reasoned, it follows that he may be removed *after* he becomes an LPR.

> Otherwise, a refugee convicted of a removable offense prior to adjustment of status could be placed in removal proceedings, while a refugee who, like the respondent, was convicted after adjustment of status for the same

-17-

offense would be immune from removal. We find no logical basis, and no support in the statutory or regulatory framework, for drawing such a distinction based on whether the conviction occurred before or after adjustment of status. The most reasonable reading of [8 U.S.C. §1159], within the overall statutory framework, is that a refugee whose status has been adjusted to that of a lawful permanent resident is subject to all applicable grounds for removal and to placement in removal proceedings . . .

Under the respondent's view, an alien admitted as a refugee who subsequently adjusted status could commit crimes with impunity, or even engage in terrorist activity and remain exempt from removal from the United States, without regard to whether he or she had a continuing need for protection from persecution in the country of origin, so long as refugee status was not terminated by the Attorney General. Given that the Attorney General is authorized to terminate refugee status only when it is determined that the alien was not, in fact, a refugee at the time of his or her initial admission as a refugee, the vast majority of aliens admitted as refugees would be immune from removal without regard to conduct after admission. It is difficult to imagine that Congress intended such a result.

*Id.* at 840-841.[9]

4.

Under *Chevron*, when a court reviews an agency's construction of the statute it administers, it must ask whether the intent of Congress on the precise question at issue is clear. If it is not clear – i.e., if the statute is silent or ambiguous with respect to the question at issue – the court must ask whether the agency's interpretation is a permissible construction of the statute. 467 U.S. 837, 842-843. If it is, the court must defer to that interpretation.

The Supreme Court has held that it is appropriate for a court to apply *Chevron* deference to BIA interpretations of the INA. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (*citing INS v. Cardoza Fonseca*, 480 U.S. 421, 448-449 (1987)). Such deference is, in fact, *particularly* appropriate in the immigration context, the Court has held, because immigration "officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *Id.* (quoting *INS v. Abudu*, 485

---

[9] The BIA noted that its conclusion does not create a conflict between the INA and the requirements of the 1967 United Nations Protocol Relating to the Status of Refugees because the Protocol's mandated protection against return of a refugee to a country where he will be persecuted is included in 8 U.S.C. §1231(b)(3).

-19-

U.S. 94, 110 (1988)).

Our court had previously determined in *Smriko v. Ashcroft*, 387 F.3d 279, 288 (3d Cir. 2004) that Congress in its immigration legislation was ambiguous and did not furnish a clear answer to the question posed in *Smriko* and which we asked at the outset of this opinion. Moreover, the legislative history gives conflicting indications about Congressional intent. *Id*. Thus we asked for the BIA's answer to this question and, now that we have received it (with the 2005 BIA opinion), our task is to decide if the BIA's interpretation is "a permissible construction of the statute." Under this second step of the *Chevron* test, the court

> must determine whether the regulation harmonizes with the plain language of the statute, its origin, and purpose. So long as the [interpretation] bears a fair relationship to the language of the statute, reflects the views of those who sought its enactment, and matches the purpose they articulated, it will merit deference.

*Zheng v. Gonzales*, 422 F.3d 98, 119 (3d Cir. 2005) (quotations and citations omitted).

That the INA addresses termination of refugee status in only one provision – 8 U.S.C. §1157(c)(4) – might suggest, as Mr. Romanishyn argues, that refugee status persists indefinitely unless it is terminated pursuant to that provision. But, as the

BIA points out, a refugee may under some circumstances be removed even if his refugee status has not been terminated. We are not only persuaded that the BIA answered the question we put to it satisfactorily, but we are satisfied as well that its answer is correct and reasonable. It was reasonable for the BIA to conclude that, because aliens who entered as refugees were not protected absolutely from removal at the moment they were applying for LPR status, Congress did not intend for them to have such absolute protection after they became LPRs. For these reasons, the interpretation of the INA that the BIA offered in *In re Smriko* "harmonizes with the plain language of the statute, its origin, and purpose," *Zheng*, 422 F.3d at 119, and is a permissible construction to which we should defer.

We thus hold that an alien who, like Mr. Romanishyn, entered the United States as a refugee pursuant to 8 U.S.C. §1157, subsequently adjusted his status to become an LPR pursuant to 8 U.S.C. §1159(a), and then was convicted of an aggravated felony and/or two or more crimes of moral turpitude, not arising out of a single scheme of criminal conduct, may be placed into removal proceedings pursuant to 8 U.S.C. §§1227(a)(2)(A)(iii) and 1227(a)(2)(A)(ii), though his refugee status was never terminated pursuant to 8 U.S.C. §1157(c)(4).

C.

Finally, we reject Mr. Romanishyn's argument that the IJ denied him due process when he limited the number of

-21-

witnesses who could testify at the hearing on his application for withholding of removal. We exercise plenary review over procedural due process claims. *Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006); *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005).

Aliens facing removal are entitled to due process. *Kamara v. Attorney General*, 420 F.3d 202, 211 (3d Cir. 2005). Due process in this context requires that an alien be provided with a full and fair hearing and a reasonable opportunity to present evidence. *Singh*, 432 F.3d at 541 (*citing Chong v. Dist. Dir., INS*, 264 F.3d 378, 386 (3d Cir. 2001)); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003). To prevail on a due process claim, an alien must show substantial prejudice. *Singh*, 432 F.3d at 541; *Bonhometre*, 414 F.3d at 448.

Mr. Romanishyn was afforded a reasonable opportunity to present evidence. The court did indeed restrict him from calling all the witnesses he wanted to call in person at his hearing. *"IJs are entitled,"* however, "to broad . . . discretion over the conduct of trial proceedings so long as those proceedings do not amount to a denial of the fundamental fairness to which aliens are entitled." *Muhanna v. Gonzales*, 399 F.3d 582, 587 (3d Cir. 2005) (quotation omitted). Here, the denial of Mr. Romanishyn's request to call more witnesses in person did not amount to a denial of fundamental fairness, and did not substantially prejudice Mr. Romanishyn. Mr. Romanishyn was permitted to submit affidavits from the

witnesses the court did not allow him to call, and the court considered those affidavits.[10] We also recognize that despite the fact that Mr. Romanishyn was permitted to call two witnesses, he only called one. *See* AR54 ("respondent was restricted to the testimony of two witnesses although only his uncle testified; the others had submitted affidavits which have been fully considered by the court.").

For all of these reasons, we reject Mr. Romanishyn's due process claim.

### III.

We will deny Mr. Romanishyn's petition for review.

---

[10] This fact distinguishes this case from *Podio v. INS*, 153 F.3d 506 (7th Cir. 1998), which Mr. Romanishyn cites in his brief. In that case, the alien had not submitted affidavits from his witnesses or any other written documentation, *id.* at 508, so the IJ's refusal to allow the alien's brother and sister to testify amounted to a refusal to allow him to submit any corroborating evidence. *Podio* is also different from the instant case in that there, the IJ prevented the alien in deportation proceedings himself from testifying fully about his own experiences, whereas here Mr. Romanishyn was allowed to testify freely.

-23-