

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-2006

# Indra v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4303

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Indra v. Atty Gen USA" (2006). *2006 Decisions.* Paper 285.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/285

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4303

PUTU POLOS INDRA
                                        Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                                        Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A79-331-393)
Immigration Judge:  R.K. Malloy

Submitted Under Third Circuit LAR 34.1(a)
September 28, 1006

Before: RENDELL, ROTH, GIBSON\*, <u>Circuit Judges</u>.

(Filed: October 27, 2006)

OPINION OF THE COURT

_____

\*  Honorable John R. Gibson, Judge of the United States Court of Appeals for the
   Eighth Circuit, sitting by designation.

RENDELL, Circuit Judge.

Petitioner Putu Polos Indra seeks review of the August 22, 2005 Order of the Bureau of Immigration Appeals ("BIA") affirming the Order of the Immigration Judge ("IJ") denying Petitioner's applications for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). We will dismiss Indra's appeal with respect to his asylum application for lack of jurisdiction. Though we have jurisdiction over the remainder of Indra's appeal under 8 U.S.C. § 1252, we will deny Indra's petition for review for the reasons set forth below.[1]

## I.

Indra, a native and citizen of Indonesia, entered the United States on December 15, 1998 with a visitor's visa that authorized him to remain until June 14, 1999. Indra remained beyond his authorized stay and on June 18, 2001, filed an application for asylum. An asylum officer rejected the application as untimely filed, and the matter was referred to an IJ. Shortly thereafter, on August 7, 2001, Indra was placed in removal proceedings by the issuance of a Notice to Appear, charging Petitioner removable under Immigration and Nationality Act ("INA") § 237(a)(1)(B), as an alien who has remained in the United States longer than authorized.

Before the IJ, Indra conceded the charge of removability but sought relief in the form of asylum under INA § 208(a), withholding of removal under INA § 241(b)(3) and

---

[1]Because we write only for the parties, we will include only those facts relevant to the issues now before us.

2

withholding of removal under CAT.[2]  Indra claimed that, as an ethnic Chinese and as a Christian, he had been the victim of violence and harassment in Indonesia and feared similar treatment if forced to return.

The IJ found that Indra was statutorily ineligible for asylum because he failed to file his application within one year of arrival and had not demonstrated that changed country conditions or extraordinary circumstances merited waiver of the one-year deadline.  With respect to Indra's applications for protection under CAT and withholding of removal, the IJ found that Indra failed to show that he had suffered persecution or torture in the past or that it was likely that he would suffer persecution or torture in the future.  Accordingly, the IJ denied Indra's applications and ordered him removed to Indonesia.  The BIA adopted and affirmed the IJ's decision.

Indra argues on appeal that he is entitled to an exemption from the asylum statute's one-year filing requirement and that he qualifies for withholding of removal and protection under CAT.

---

[2]In the alternative, Petitioner sought voluntary departure under INA § 240B(b).  The IJ denied this relief and Petitioner did not appeal this ruling to the BIA or to us.

## II.

We are without jurisdiction to review the denial of Indra's application for asylum. As we have previously held, "the language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances." *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d. Cir. 2003). Here, Indra's appeal of the denial of his asylum application falls squarely within this rule, as it is premised solely on a challenge to the IJ's determination that no "extraordinary circumstances" merited waiver of the one-year filing deadline. Therefore, we will dismiss this portion of Indra's appeal.

With respect to the remainder of Indra's appeal, we review the IJ's decision directly when, as here, the BIA has merely adopted the IJ's rationale. *Id*. at 184. "Board determinations are upheld if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d. Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We will reverse only if "the evidence not only supports [a contrary] conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481 n.1.

Finally, we "review the 'BIA's legal decisions *de novo*, but will afford Chevron deference to the BIA's reasonable interpretations of statutes which it is charged with administering.'" *Romanishyn v. Attorney Gen. of the United States*, 455 F.3d 175, 180 (3d. Cir. 2006) (quoting *Francois v. Gonzales*, 448 F.3d 645, 648 (3d. Cir. 2006).

4

## III.

An alien is entitled to withholding of removal if he or she can demonstrate a "clear probability of persecution" "on account of" race, religion, nationality, membership in a particular social group or political opinion. *Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003) (discussing the statutory requirements for withholding, as governed by 8 U.S.C. § 1101(a)(42)(A)).

In order to be eligible for relief under CAT, an alien must show that it is more likely than not that he will be tortured if removed to his country of origin. 8 C.F.R. § 208.16(c)(2); *Kamara v. Ashcroft*, 420 F.3d 202, 213 (3d Cir. 2005). The regulations implementing CAT define torture as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1); *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir. 2002). "The standard for relief 'has no subjective component, but instead requires the alien to establish, by objective evidence' that he is entitled to relief." *Sevoian*, 290 F.3d at 175 (quoting *In re J-E-*, 23 I. & N. Dec. 291, 302 (BIA 2002) (*en banc*)).

5

Indra alleges three incidents that he argues establish his eligibility for withholding of removal and protection under CAT.[3] First, Indra alleges that in the course of operating his used car dealership, a Moslem competitor came to Indra's home, addressed him with racial epithets, threatened him and severely damaged one of the cars on his lot in an attempt to coerce Indra into closing his business. However, at his hearing and in his affidavit, Indra also testified that the police arrived on the scene and "cooled down the situation" and that, though the police did not arrest or otherwise pursue the perpetrator, Indra did not suffer another incident of vandalism or violence against his business.

Second, Indra alleges that while riding his motorcycle past a soccer stadium a crowd identified him as Chinese, surrounded him and began hitting him on the head and arm. As Indra describes it, he was only able to escape after shouting Moslem religious phrases and denouncing the Chinese, apparently in an effort to "pass" as a non-Chinese Moslem. Indra did not claim that he was injured, stating that his motorcycle helmet protected him.

Finally, Indra describes an incident in which he was robbed of his wallet and motorcycle. Indra claimed that, while riding home from church services, a mob stopped him, found his Bible and began physically attacking him while shouting anti-Christian slogans. The attack ended once the mob took Indra's wallet and motorcycle. Indra

---

[3]At his hearing before the IJ, Indra waived direct examination and instead opted to rely on the claims he made in two supporting affidavits. The following allegations are drawn from Indra's affidavits as well as his testimony on cross-examination.

alleges that he reported this incident to the police but that they demanded money and, ultimately, were unhelpful. Finally, though he claims that he was struck during the course of this attack, Indra does not allege that the incident resulted in any serious physical injury.

Although the IJ noted some inconsistencies between Indra's affidavits, his testimony on cross-examination and his asylum office interview, the IJ ultimately did not dispute the veracity of Indra's allegations. Instead, the IJ held that, as a matter of law, the alleged incidents did not rise to the level of persecution or torture and failed to establish a likelihood that Indra would suffer persecution or torture in the future. In reaching this conclusion, the IJ relied on three primary findings. First, the IJ found that the motive behind at least two of the attacks appeared to be monetary and, therefore, that those incidents were more properly characterized as "acts of criminals" rather than as instances racially or religiously motivated violence. Second, the IJ found that Indra did not put forward adequate evidence demonstrating that the police ignored the crimes because of Indra's race or religious beliefs.

Finally, in regard to the probability of future persecution or torture, the IJ took note of Indra's testimony regarding his brother, a Chinese-Indonesian serving openly as a Christian evangelist and living without difficulty on the Indonesian island of Bali. The IJ noted that Indra's testimony established that he was born and lived on Bali until the age of fifteen, had family on the island and could live there without fear of harassment. The

7

IJ held that these findings severely undermined Indra's position that he would suffer persecution or torture if removed to Indonesia.

We believe that substantial evidence supports the IJ's conclusion that Indra is unlikely to suffer persecution or torture if returned to Indonesia. Additionally, to the extent that the IJ's ruling relies upon conclusions of law, we find no error.

Accordingly, we will deny Indra's petition for review with respect to his applications for withholding of removal and protection under CAT, and we will dismiss for lack of jurisdiction Indra's appeal with respect to his asylum application.

_____