

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2008

# Blanco v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3200

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Blanco v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1188.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3200
_____

CARLOS BLANCO; LUZ LOPEZ; JUAN DAVID BLANCO; JOSE BLANCO,
*Petitioners*,

v.

ATTORNEY GENERAL OF THE UNITED STATES
*Respondents*,

_____

On Review of an Order of the
Board of Immigration Appeals
Immigration Judge: Honorable Henry S. Dogin
(Nos. A72-375-960, A72-375-961, A72-375-962, A72-375-963)

_____

Submitted Under Third Circuit LAR 34.1(a)
May 14, 2008
Before: Chief Judge SCIRICA, FUENTES and GARTH, Circuit Judges

(Filed May 20, 2008)

_____

**OPINION**
_____

PER CURIAM

Carlos Blanco ("Blanco"), his wife Luz Lopez, and their children Juan David

Blanco and Jose Blanco, petition for review of a final order of the Board of Immigration

Appeals ("BIA"), affirming the denial by the Immigration Judge ("IJ") of their

application for withholding of removal and relief under the Convention Against Torture ("CAT"). Blanco testified before the IJ that he feared returning to Colombia because of his past experiences with FARC guerillas. Blanco also testified that he feared returning to Colombia because he would be persecuted for his past political activities. The IJ, finding that Blanco's experiences did not constitute persecution, denied Petitioners' application.[1] The BIA affirmed and adopted the IJ's decision.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We uphold the BIA's determinations if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Yusupov v. Att'y Gen., 518 F.3d 185, 197 (3d Cir. 2008). Where the BIA substantially adopts the findings of the IJ, we review the decisions of both the IJ and the BIA. He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

To obtain withholding of removal, the Petitioners must demonstrate a clear probability that their lives or freedom would be threatened in Colombia on account of their race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); Romanishyn v. Att'y Gen., 455 F.3d 175, 178 n.1 (3d Cir. 2006). The Petitioners can be eligible for withholding of removal under the CAT if they show that it is more likely than not that they would be tortured upon return to their country. 8 C.F.R. § 1208.16(c).

---

[1] Lopez's and the children's applications are based on Blanco's claims of past persecution.

We agree with the IJ and the BIA that Petitioners failed to establish past persecution; thus they are not entitled to a rebuttable presumption of future persecution. See 8 C.F.R. § 208.16(b); Gabuyina v. Att'y Gen., 463 F.3d 316, 321 (3d Cir. 2006). Blanco testified that in 1985, while he was a teacher in a village in Colombia, his assistant teacher was killed by FARC guerillas.[2]  The family then moved to Filandia in the province of Quindio, where Blanco became active in the now defunct Patriotic Union political party and unsuccessfully ran for mayor.  Blanco claimed that he received threats from members of the victorious Conservative political party after the election.  One year later, in 1991, unidentified assailants fired gunshots at his house.  Shortly thereafter, Blanco immigrated to the United States.  Blanco claimed that the shooting was motivated by his activities on behalf of the Patriotic Union.

We agree with the IJ and the BIA that these incidents do not rise to the level of persecution.  As we have previously stated, persecution is limited to "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993).  Blanco acknowledged that he was not harmed, or even present when his co-worker was killed.  The death of Blanco's co-worker is a tragic event; however, we fail to see how it constituted a threat to Blanco's life or freedom.  Moreover, while Blanco resigned his teaching position after his

---

[2] According to Blanco, the FARC believed that teachers were spies for the Colombian government.

co-worker's death, he was able to maintain his membership in the teachers' union and he obtained a position working for his father. Finally, Petitioners' fear of future persecution based on this incident is dubious since they remained in Colombia for six years following the incident without any further encounters with the FARC. See 8 C.F.R. § 208.13(b)(1)(i)(B) (stating that the Government can rebut the presumption of a well-founded fear arising from a showing of past persecution by proving that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality").

Substantial evidence also supports the IJ's determination that the 1991 shooting was an isolated incident of random violence that falls short of persecution. See, e.g, Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001). Blanco alleged that the shooting was perpetrated by government forces dressed in civilian clothing. Blanco, however, did not see the shooters, presented no evidence to substantiate his belief that the perpetrators were government agents and acknowledged that the police never determined who was responsible for the shooting.

We also agree with the IJ that Blanco's 15 year old unsuccessful mayoral candidacy is insufficient to show that Petitioners would "more likely than not" be tortured if they returned to Colombia. Further, the IJ properly determined that Petitioners' fear of torture is undercut by the fact that Lopez and the children returned to Quindio for six weeks in 1995 without suffering any harm. Therefore, the IJ and BIA also justifiably

denied Petitioners' application for protection under CAT.  See 8 C.F.R. § 208.16(c)(2).

For the above-stated reasons, we will deny the petition for review.