OPINION
PER CURIAM.
Petitioner Mykola Kovalchuk seeks review of the Board of Immigration Appeals’ (“BIA”) final order of removal. In its order, the BIA affirmed the Immigration Judge’s (“IJ”) decision to deny his application for withholding of removal and protection under the Convention Against Torture (“CAT”). We will deny the petition.
I.
Mykola Kovalchuk is a native and citizen of Ukraine. Kovalchuk entered the United States on a non-immigrant visa in 1998. In November 1998, his nonimmigrant visa was converted to F-l student status. However, after his student visa expired, Kovalchuk remained in the country. After removal proceedings commenced, Koval-chuk filed a application for asylum, which he later conceded was untimely.[1] He also sought withholding of removal and relief under the CAT on the ground that he had been persecuted in Ukraine because of his religion. He alternatively requested voluntary departure. In his application for withholding of removal, Kovalchuk claimed that he left Ukraine in February 1998 to escape persecution that he experienced after becoming a Baptist the year before.
At his removal hearing, Kovalchuk testified that a friend introduced him to the Baptist faith in 1997. Kovalchuk explained that his friend had been beaten because of his Baptist beliefs and that the beating sparked his own interest in better understanding why some people hate others. Kovalchuk attended a meeting of Baptists in February 1997 and was baptized soon *337 after. He claimed that he only told a few acquaintances about his baptism, but that one such individual told him that “bad things” would happen to him as a result of it. Kovalchuk testified that in June 1997, while walking home one day, that same person, along with two others, stopped him and took his briefcase. Upon finding a Bible inside it, they confiscated it and threw Kovalchuk to the ground. He claimed that he suffered injuries including a severe headache and vomiting, but he did not seek medical treatment.
Kovalchuk also testified that he received threatening phone calls, but that the police refused to pursue the case, explaining that an officer told him that he “[didn’t] need any Baptist elements.” Kovalchuk wrote a letter to the city council complaining of his treatment, but they told him that he should go to the police. Upon going to the police station, Kovalchuk claimed that officers beat him up because he was involved in “anti-Ukrainian” activities. The officers also detained him for three days. After he was released, he left his hometown of Ga-lich and went to Kiev, hoping that the authorities there would help him. He was arrested, however, and told to return home. In October 1997, while working in a field, Kovalchuk testified that he was assaulted and that one of the men who attacked him threatened to kill him because of his religion. He believed that if he returned to Ukraine, he might be killed.
Following the hearing, the IJ denied Kovalchuk’s application for withholding of removal and relief under the CAT, but granted him voluntary departure. The IJ determined that Kovalchuk had not presented evidence sufficient to demonstrate that he had been persecuted in the past or that he it was more likely than not that he would be persecuted in the future. The IJ found Kovalchuk’s claim of past persecution unpersuasive because he did not present any witnesses or provide any medical records describing physical or mental problems stemming from his experiences in Ukraine. The IJ also questioned the extent of Kovalchuk’s current commitment to the Baptist faith as he offered no evidence of his involvement in the religion other than a letter from a pastor stating that he had been attending church services. Lastly, the IJ noted that since Kovalchuk left Ukraine, the political landscape had changed. A recent State Department report explained that citizens are allowed greater freedom of association under the current Ukranian President, and thus, Kovalchuk did not have a well-founded fear of future persecution.
Kovalchuk appealed the IJ’s decision to the BIA and, in a November 2008 opinion, the BIA dismissed Kovalchuk’s appeal. The BIA determined the IJ did not err in finding that Kovalchuk did not provide the evidence sufficient to corroborate his claim and that his explanations for not doing so were unpersuasive. The BIA also affirmed the IJ’s ruling that Koval-chuk did not have a well-founded fear of future persecution in Ukraine, disagreeing with Kovalchuk’s assertion that the IJ gave improper weight to State Department Country reports. Lastly, the BIA disagreed with Kovalchuk’s claim that his due process rights were violated when the IJ precluded his proposed expert witness from testifying at the hearing.[2] This petition for review followed.
II.
This Court has authority to review final orders of removal. See 8 U.S.C. § 1252(a). “[W]hen the BIA both adopts the findings *338 of the IJ and discusses some of the bases for the IJ’s decision, we have authority to review the decisions of both the IJ and the BIA.” Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir.2004). The BIA’s factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).
For withholding of removal, an applicant must prove that his “life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1231(b)(3); 8 C.F.R § 208.16(b). A petitioner applying for withholding of removal must establish a clear probability of persecution. 8 U.S.C. § 1231(b)(3). A “clear probability means more likely than not.” INS v. Stevie, 467 U.S. 407, 429-30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). An applicant seeking relief under the CAT must establish that “it is more likely than not” that he would be tortured if removed to the proposed country of removal. Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir.2002) (quoting 8 C.F.R. § 208.16(c)(2)).
First, Kovalchuk argues that the BIA erred in upholding the IJ’s determination that he failed to present evidence sufficient to corroborate his claim of past persecution based on his Baptist faith. Specifically, Kovalchuk claims that the IJ and BIA did not give sufficient weight to his explanation that much of evidence supporting his claim was unavailable. Second, Kovalchuk argues that the BIA erred in upholding the IJ’s decision to afford substantial weight to State Department Country reports to the exclusion of other evidence regarding country conditions in Ukraine. Third, Kovalchuk argues that the BIA improperly denied his claim that the IJ violated his due process rights by denying his expert witness an opportunity to testify at the hearing.
The IJ and BIA may expect reasonable corroboration of a claim. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir.2001). An applicant’s failure to corroborate may undermine his case if: (1) the facts at issue are facts for which corroboration is reasonable to expect; (2) the applicant failed to corroborate those facts; and (3) the applicant has not adequately explained his failure to do so. Id. We find the BIA’s determination that Kovalchuk failed to provide sufficient corroborating evidence is supported by substantial evidence.
Kovalchuk testified that he suffered marks and scars on his lips and nose after he was beaten. (A.R.176-77.) However, he did not provide any documentary evidence either demonstrating that he sought treatment from doctors or verifying that he had previously been injured in Ukraine. Ko-valchuk was also unable to provide any documents showing that he has sought medical treatment in the United States for any of his injuries. (Id. at 167-69.) When questioned about the availability of evidence supporting his claim that he was a practicing Baptist in Ukraine, such as a baptismal birth certificate or statements from his Baptist friends, Kovalchuk claimed the evidence was unavailable. (Id.) As mentioned, Kovalchuk was only able to provide a letter from his current pastor stating that he has attended church services in the United States.
We agree that Kovalchuk’s inability to produce any information corroborating his Baptist affiliation in Ukraine — e.g., a baptismal birth certificate or an affidavit from his former pastor — coupled with his inability to provide any medical records, undermined his ability to establish his claim. Abdulai, 239 F.3d at 554. Furthermore, *339 Kovalchuk showed no visible physical signs of past torture at his hearing and he did not provide any historical data supporting his claim that Baptists suffered routine persecution in Ukraine in 1997 and 1998.
We also find that substantial evidence supports the IJ’s and BIA’s conclusion that Kovalchuk would not be harmed upon his return to Ukraine. Although Ko-valchuk argues that the IJ and BIA improperly relied upon State Department Country reports to reach their conclusion, this Court has recognized that reliance on State Department reports is justifiable and that such reports may constitute “substantial evidence” for the purposes of reviewing immigration decisions. See Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir.2004). Kovalchuk argues that the IJ ignored articles that he submitted in support of his application discussing the treatment of Orthodox Christians in Ukraine. However, a review of the articles shows that they do not contradict the information observed in the State Department Reports in any meaningful way.
Lastly, Kovalchuk argues that the BIA improperly concluded that his due process rights were not violated when the IJ refused to allow his expert witness to testify at the hearing. Although there is no constitutional right to asylum, aliens facing removal are entitled to due process. See Sewak v. INS, 900 F.2d 667, 671 (3d Cir.1990). In this context, the Due Process Clause entitles an alien to “a full and fair hearing and a reasonable opportunity to present evidence.” Romanishyn v. Att’y Gen., 455 F.3d 175, 185 (3d Cir.2006). To prevail on a due process claim, an alien must show substantial prejudice. Id.
The IJ, after considering the expert’s affidavit and curriculum vitae, determined that he had no specialized knowledge regarding the treatment of Baptists in Ukraine. (A.R.52.) Kovalchuk’s attorney admitted at the hearing that the expert had no specialized knowledge about the treatment of Christians in Ukraine. (Id. at 174.) In his brief, Kovalchuk does not address what particular conclusions drawn by the IJ based upon the State Department Reports the expert would have refuted. Accordingly, he has not presented any specific information on appeal showing that he was prejudiced by the IJ’s refusal to allow the expert to testify, particularly where the IJ considered the expert’s curriculum vitae and affidavit prior to rendering his decision. See Romanishyn, 455 F.3d at 185-86.
Finally, the BIA did not err when it concluded that Kovalchuk had not established a basis for relief under the CAT, as he did not demonstrate that it is more likely than not that he would be tortured if returned to Ukraine. Accordingly, we will deny the petition for review.

. Kovalchuk filed his application for asylum only after he was served with a Notice to Appear on June 23, 2003. His attorney conceded at the hearing that Kovalchuk had failed to apply for asylum within one year of entering the country, and there were no changed or extraordinary circumstances to excuse his failure to do so. See 8 U.S.C. § 1158(a)(2)(B).

. The IJ considered the expert’s curriculum vitae and affidavit and determined that he had no expertise on the treatment of Baptists in Ukraine.